Filed 7/21/21  P. v. Johnson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075238 |
| v. | (Super.Ct.No. SCR44436) |
| JESSIE JOHNSON, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristen Chenelia and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant and appellant Jessie Johnson, Jr., appeals the denial of a petition for resentencing under Penal Code[1] section 1170.95, following an evidentiary hearing on an order to show cause. Because substantial evidence supports the trial court's finding that he was ineligible for section 1170.95 relief, we affirm.

## FACTUAL BACKGROUND

The factual background comes directly from the unpublished opinion we issued in 1988, affirming defendant's convictions in *People v. Johnson* (Nov. 30, 1988, E004988).

"Defendant worked for his father in a truck tire business. Victim Virginia Brackney made arrangements to have eight truck tires installed on her diesel truck for the sum of $1,900. Defendant and codefendant Willie Harris, were dispatched to obtain the tires, transport and mount them on the truck at the Brackney residence. Upon the pair's arrival, Mrs. Brackney went to the bank to obtain the $1,900 cash.

"Later that afternoon, the victim's daughter arrived at the family home to discover her mother missing. Both defendants were at the residence and told the daughter her mother had not returned from the bank. Noting both family vehicles at the residence, the daughter became concerned and began contacting family and friends in an attempt to locate her mother.

"After defendants left, the victim's ex-husband searched a truck trailer on the property and located the victim's body in a wooden box. The victim had been beaten to

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

death with one or more hard metal objects. The following day, sheriff's investigators found the victim's empty purse in a dumpster of a nearby 7-Eleven store. Both defendants were interrogated. Each of them ultimately admitted being present at the slaying, each saying the other did the actual killing. The motive according to each defendant was robbery. Johnson also admitted he assisted the codefendant in cleaning up the crime scene but denied participation in removing or hiding the body. Tire irons which were taken from [the] defendants by investigators were examined by the pathologist and determined to be capable of causing injuries consistent with the wounds suffered by the deceased. In a search of [the] codefendant's residence, investigators recovered bloodstained pants. Upon chemical analysis, the blood was consistent with that of the victim."

## PROCEDURAL BACKGROUND

On or about December 17, 1986, defendant entered a plea agreement and pled guilty to second degree murder (§ 187, count 1) and robbery (§ 211, count 2). In exchange, the People agreed to dismiss a deadly weapon enhancement (former § 12022, subd. (b)) and run the sentence on count 2 concurrent. On December 4, 1987, a trial court sentenced him to 15 years to life on count 1 and a concurrent five years on count 2, pursuant to the plea agreement.

On January 25, 2019, defendant filed a petition for resentencing pursuant to section 1170.95, claiming entitlement to relief since he pled guilty or no contest to first or second degree murder because he believed he could have been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable

3

consequences doctrine, and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. Defendant requested that counsel be appointed on his behalf. In its response to the petition, the People filed a motion to strike the petition, arguing that Senate Bill No. 1437 was unconstitutional. The People later filed a letter contending that defendant failed to set forth a prima facie case for relief. Defendant filed a reply brief and requested the court to issue an order to show cause. Following a hearing on the petition, the trial court found the petition established a prima facie case, issued an order to show cause, and ordered a hearing to take place in accordance with subdivision (d) of section 1170.95.

The court held the evidentiary hearing, beginning on January 21, 2020. The People argued that defendant was a major participant in the underlying felony and acted with reckless disregard for human life. The prosecutor called codefendant Harris to testify. Harris said he served 30 years in prison as a result of the incident in this case and was paroled on June 3, 2016. He testified that on the day of the murder he was working with defendant. He heard the victim tell defendant that they were to change eight tires out, and she was leaving for the bank and would come back with the money to pay them. Harris testified that, when the victim returned to the residence with the money, defendant struck her with a tire iron, at least a couple times. Then Harris picked up a tire iron and also struck her with it. He said she fell to the ground, but they did not know if she was dead. They put her in a brown box to hide her body and then put the box in the back of her semi-truck. They went back to wipe up the blood and sprayed water to clean it up. After they cleaned up the area, they went to 7-Eleven and bought some beer. Then they

4

returned to the victim's house, and defendant had a conversation with the victim's daughter. He told her that they were supposed to fix the tires and that the victim left and never came back. Harris further testified that, after they came back from 7-Eleven, the only thing they said to each other was, "If you get caught, don't mention my name. If I get caught, don't mention yours."

On cross-examination, defense counsel confirmed with Harris that he had had six parole hearings and asked if he told the parole board at his last hearing in 2016 that he did not hit the victim with a tire iron. Defense counsel said Harris changed his statement at every hearing, which Harris denied. Defense counsel had Harris read the transcript from the last parole hearing in order to show him he did not admit to the board that he picked up a tire iron and hit the victim. Harris said the parole board never asked him if he picked up a tire iron. Defense counsel kept trying to get Harris to say that his statement that he hit the victim was completely different than his previous statements, and that he had been lying about what happened for 30 years.

The defense introduced into evidence the transcripts of several of Harris's parole review hearings. Throughout those hearings, Harris said he participated in the crime, but asserted that defendant hit the victim with the tire iron. After defendant hit her, Harris asked what he was doing, and defendant said he needed the money. Harris said he helped by putting the victim's body in the box and putting the box in the trailer.

The People moved into evidence the transcript from the preliminary hearing. At that hearing, the pathologist who performed the autopsy on the victim's body testified that the victim received a minimum of 10 blows and died from multiple blunt injuries.

5

He could not say which of the injuries caused her death, but the potential fatal blows were to her head and abdomen. He further testified that these two injuries had to have been inflicted with a large amount of force, similar to that of a grown man swinging a tire iron like a baseball bat, with a full-strength swing. In addition, a bank teller testified that the victim cashed a check for approximately $2,000 and told her the money was for some tires. Furthermore, an employee of the 7-Eleven testified that he found the victim's purse behind one of the store's dumpsters, and there was no money in it.

After reviewing the evidence, the court denied defendant's section 1170.95 petition. In doing so, it issued a lengthy oral and written statement. The court began by acknowledging that Harris's statements about this murder had historically lacked credibility since they "appeared less than candid regarding [his] own involvement." It noted that his testimony at the petition hearing significantly modified and added to the story, with his admission that he personally participated in the beating that killed the victim. The court opined that there was no reason for Harris to say defendant physically attacked the victim unless it was true and that Harris persuasively claimed he had no motive to falsely accuse defendant. The court further stated that it shared the public defender's concerns regarding Harris's credibility and conceded that his testimony, standing alone, might be insufficient to support its denial; however, it said that defendant's own actions "should not be overlooked and cannot be ignored." The court then stated:

"Harris' uncontradicted testimony that both actually beat the victim is suggestive that the incident did not just spontaneously erupt. It is undisputed the Defendant was

6

present when the victim was beaten. . . . Defendant did not stop the beating after it started, and Defendant did not render aid to the victim. Defendant could have summoned medical aid but never did. From the evidence presented, Defendant was in a position to at least try and prevent the victim's death. Defendant's choice to permit the victim to be stuffed in the wood box (she may still have been alive) as opposed to calling the police and summoning medical help is powerful circumstantial evidence the Defendant was *not* just a bystander, and it corroborates Harris' testimony Defendant was an actual participant in the beating that killed the victim."

The court further commented that defendant was instrumental in cleaning up the crime scene, which it described as "a deceptive activity designed to avoid detection." The court also noted that defendant and Harris went to 7-Eleven and disposed of the victim's purse, which was another effort to avoid detection. Furthermore, defendant lied to the victim's daughter when he said they were waiting for the victim to return with the payment. The court observed that defendant had multiple opportunities to alert others that the victim had been beaten, including her daughter, her daughter's friend who came to see her daughter, the people at 7-Eleven, and his father. However, instead of telling anyone what happened, defendant fabricated a story to avoid detection of the murder, and he and Harris reached an agreement that if either was caught, neither was to mention the other.

The court concluded by finding "by proof beyond a reasonable doubt that Defendant Jesse Johnson, Jr.[2] is ineligible for resentencing." It then denied the petition.

## DISCUSSION

### The Evidence Was Sufficient to Support the Court's Finding That Defendant Was Ineligible for Relief

Defendant contends the prosecution failed to prove beyond a reasonable doubt that he was ineligible for resentencing under section 1170.95. He states that the issue before this court is "whether substantial evidence supports the trial court's finding that Willie Harris . . . was credible in testifying that appellant precipitated and participated in the killing of [the victim]."

He specifically claims that there was no credible evidence as to who committed the killing and how it was done, since the only evidence came from previous statements made by Harris and Harris's testimony at the hearing on the petition. Defendant asserts that "Harris was and is a self-serving liar . . . [and] [t]here is absolutely no reason to give any credence to anything Harris said." The People argue that substantial evidence demonstrates that defendant was a major participant who acted with reckless disregard for human life.[3] The People further assert that defendant is essentially asking us to reweigh Harris's credibility, which we cannot do. We agree with the People.

_____

[2] Defendant's first name is spelled alternately as "Jesse" and "Jessie" in the record.

[3] In the alternative, the People contend that there was substantial evidence that defendant was the actual killer. However, since the court did not make that finding, we decline to reach that issue.

8

A.  *Standard of Review*

On appeal from a denial of relief following an evidentiary hearing under section 1170.95, subdivision (d), we review the trial court's factual findings for substantial evidence.  (*People v. Lopez* (2020) 56 Cal.App.5th 936, 953-954, review granted Feb. 10, 2021, S265974.)  Under that familiar standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Morales* (2020) 10 Cal.5th 76, 88.)  " 'We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.)  " 'We do not reweigh evidence or reevaluate a witness's credibility.' " (*Ibid*.)

B.  *Senate Bill No. 1437*

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

"To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code.  First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is

9

proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'" (*Gentile*, *supra*, 10 Cal.5th at p. 842.)

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at pp. 842-843.)

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)  "Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing.  First, the person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' (§ 1170.95, subd. (a)(3); see § 1170.95, subd. (b)(1)(A).)  Then, the trial court must 'review the petition and determine if the petitioner has made a prima facie

10

showing that the petitioner falls within the provisions of th[e] section.' (§ 1170.95, subd. (c).)  If so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d)(1).)  At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' " (*Gentile*, at p. 853.)

C.  *The Evidence Was Sufficient to Support the Court's Finding That Defendant Was Ineligible for Relief*

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), the Supreme Court examined the conduct for which an accomplice who lacks the intent to kill may be liable under principles of aiding and abetting felony murder.  (*Id.* at pp. 802-803.)  The Court set forth various considerations to determine the ultimate question of whether the defendant's conduct amounted to major participation " 'in criminal activities known to carry a grave risk of death.' "  (*Id.* at p. 803.)  Those circumstances, posed as questions, include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the

11

actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Ibid.*, fn. omitted.)

The Court again addressed aiding and abetting principles under felony murder in *People v. Clark* (2016) 63 Cal.4th 522 to consider circumstances in which an aider and abettor harbors the requisite mental state (reckless indifference to human life) for felony murder liability.  (*Id.* at p. 615.)  Those circumstances often overlap with those set forth in *Banks* for major participation, and include the following: the number of firearms used during the predicate crime (here, robbery), the defendant's knowledge they would be used, and whether the defendant used a firearm; the defendant's presence during the robbery and opportunity to restrain the crime or aid the victim; the duration of the robbery; the defendant's knowledge that one of his cohorts would likely kill; and the defendant's efforts, if any, to minimize the possibility of violence during the robbery.  (*Id.* at pp. 615, 618-623.)  " '[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' "  (*Id.* at p. 618.)

Here, substantial evidence supports the trial court's finding that defendant was a major participant in the robbery and acted with reckless indifference to human life.  We note the court did not expressly find that defendant was a major participant and acted with reckless indifference, but instead stated that the proof showed beyond a reasonable doubt that he was ineligible for resentencing.  However, in view of the court's order, and as the parties acknowledge, it is clear the court found he was a major participant.  The court  pointed out that Harris's testimony was uncontradicted that both he and defendant beat the victim.  It noted that defendant was present when the victim was beaten, she was

12

hit with tire irons, defendant did not stop the beating after it started, and he did not render aid to the victim. Furthermore, the court found he could have summoned medical help, but never did. It found that defendant's choice to permit the victim to be stuffed in the wood box, as opposed to calling the police and summoning medical help, was "powerful circumstantial evidence" that he was not just a bystander but an actual participant. The court noted that the weapons of choice were tire irons, which were highly lethal when "swung like a baseball bat" by grown men. Moreover, defendant cleaned up the crime scene, which indicated he was trying to avoid detection of the crime, and he later lied to the victim's daughter when he told her they were still waiting for the victim to return with the money. In addition, defendant showed a reckless indifference to life in that he had multiple opportunities to tell others that the victim had been beaten, including the victim's daughter and the people at 7-Eleven. Instead of telling anyone what happened, he covered up the crime and deceived others to avoid detection. Furthermore, he and Harris agreed not to tell on the other person if they got caught.

Defendant does not contend that Harris's testimony did not demonstrate that he was a major participant and acted with reckless indifference to human life. Instead, he argues the evidence was insufficient to support the trial court's ruling since Harris's testimony was not credible. Defendant points to the magistrate's finding at the preliminary hearing that there was "barely sufficient" evidence to hold him to answer. He cites multiple instances in which Harris's testimony at the petition hearing was inconsistent with his prior statements at past parole board hearings. He also points out that the parole board commissioners opined Harris lacked credibility and lied about his

13

part in the incident. Defendant then directs this court to "read the entirety of those parole suitability hearings in order to get a true understanding of why nothing Harris has to say about this offense should be given any credit."

Defendant is essentially asking us to evaluate Harris's credibility, discredit him, and thereby find the evidence insufficient to support the court's denial of his petition. However, we cannot do so. " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

Moreover, the court here was well aware of Harris's past statements that may have been inconsistent with his testimony at the hearing. It began its denial order by acknowledging that his statements had historically lacked credibility since they "appeared less than candid regarding [his] own involvement." The court acknowledged that his testimony at the hearing added the admission that he personally participated in the beating that killed the victim. However, it opined that there was no reason for Harris to say defendant physically attacked the victim unless it was true and that Harris persuasively claimed he had no motive to falsely accuse defendant. In other words, the court found his testimony credible having carefully considered all of the evidence and

14

observing Harris's demeanor at the hearing.[4]  The trial court thoughtfully performed its duty to determine the credibility of the witness.  Defendant contends that the trial court was incorrect in finding there was no reason for Harris to lie in his testimony at the hearing and that "nothing Harris has to say about this offense should be given any credit." At the same time, he argues the trial court did not actually credit Harris's testimony; otherwise, it would have concluded that defendant was the actual killer, and there would have been no reason to find him guilty as a major participant.  We respectfully disagree with this assertion.  It is clear that the trial court did credit Harris's testimony having determined that there was no reason for Harris to say defendant physically attacked the victim unless it was true and that Harris persuasively claimed he had no motive to falsely accuse defendant.  It was the exclusive province of the trial judge to determine Harris's credibility "and the truth or falsity of the facts upon which a determination depends," and "[w]e resolve neither credibility issues nor evidentiary conflicts."  (*Zamudio*, *supra*, 43 Cal.4th at p. 357.)

Viewing the evidence in the light most favorable to the judgment, as we must, we conclude there was sufficient evidence to support the court's conclusion that defendant was ineligible for resentencing under section 1170.95.

---

[4]  We note that "[i]t is well settled that 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281.)  Nothing in Harris's testimony about what occurred appears to be physically impossible or inherently improbable.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                            J.


We concur:


MILLER _____
                Acting P. J.


SLOUGH _____
                        J.

16